FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR - 9 2009

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> vs. ) <br> ) <br> **CAROLYNNE TILGA,** ) <br> **MICHAEL CHANDLER** and ) <br> **HELEN GEER,** ) <br> ) <br> Defendants. ) <br> ) <br> ) | CRIMINAL NO. _09-865_ <br><br> Count 1: 18 U.S.C. § 371: Klein Conspiracy; <br><br> Counts 2-7: 26 U.S.C. § 7201: Income Tax Evasion; <br><br> Counts 8-10: 26 U.S.C. § 7206(1): False Tax Returns. |

### INDICTMENT

The Grand Jury charges:

#### Introduction and Background

1. **CAROLYNNE TILGA, MICHAEL CHANDLER,** and **HELEN GEER** all resided in the District of New Mexico from the years 1998 through 2004.

2. From at least the year 2001 to present, **CAROLYNNE TILGA** and **MICHAEL CHANDLER** were husband and wife.

3. During the years 1998 through 2006, **CAROLYNNE TILGA** owned and controlled various businesses involved in adult entertainment internet services. **MICHAEL CHANDLER** worked with **CAROLYNNE TILGA** in several of these adult entertainment internet businesses.

4. **CAROLYNNE TILGA's** adult entertainment businesses generated significant revenues during the 1998 through 2006 period.

5. Beginning on or about 2002 and continuing through on or about 2004, **HELEN GEER** was employed by **CAROLYNNE TILGA** as the in-house accountant for Defendant **TILGA's** adult entertainment businesses.

6. The Internal Revenue Service (hereinafter "IRS") is an agency within the United States Department of Treasury responsible for the assessment and collection of income taxes from individuals, businesses, and other tax-paying entities.

7. During the years 1998 through 2006, **CAROLYNNE TILGA** and **MICHAEL CHANDLER** took steps to conceal from the IRS a significant amount of the taxable revenues generated from the adult entertainment internet businesses.

8. From on or about the year 2002 to 2004, Defendant **HELEN GEER** aided Defendants **CAROLYNNE TILGA** and **MICHAEL CHANDLER** in concealing from the IRS a significant amount of the taxable revenues generated from the adult entertainment internet businesses.

9. Commonwealth Trust Company (hereinafter "CTC") was an organization which promoted and sold various trust products designed and used to conceal income and assets from the IRS.

10. Defendants **TILGA** and **CHANDLER** purchased the following CTC entities:

    A. Cabernet Financial on or about April, 1998;

    B. Worldwide Communications on or about June, 1998;

    C. General Management Services on or about 1998;

    D. Astra Management, on or about 1999;

    E. Bressingham Investments, on or about 1998;

F.  Vantage Global, on or about September, 2001;

G.  Batavia Guild Group on or about April, 2002;

H.  Triad Universal on or about May, 2002;

I.  Alsacia Marketing Services on or about 2002;

J.  Enchantment Property Management on or about May, 2003.

## Count 1

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

11.  Beginning in or about 1998, the exact date being unknown to the Grand Jury, and continuing through on or about June 2006, in the District of New Mexico, and elsewhere, the Defendants **CAROLYNNE TILGA ("TILGA")**, **MICHAEL CHANDLER ("CHANDLER")**, and **HELEN GEER ("GEER")**, with others known and unknown to the Grand Jury, including CTC, did knowingly and unlawfully combine, conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS.

### Manner and Means

12.  It was a part of the conspiracy that the Defendants purchased and used various CTC products to conceal from the IRS significant amounts of income generated from their adult internet businesses.

13.  It was a further part of the conspiracy that the Defendants hid assets using several CTC entities located outside the Unites States.

14. It was a further part of the conspiracy that the Defendants **TILGA** and **CHANDLER** did not report to the IRS the income transferred to the offshore CTC entities.

15. It was a further part of the conspiracy that the Defendants **TILGA** and **CHANDLER** retained dominion and control over the offshore CTC entities, primarily by directing numerous wire transfers of funds from the offshore CTC entities back to the United States for their use and benefit.

16. It was a further part of the conspiracy that the Defendants **TILGA**, **CHANDLER**, and **GEER** placed assets in the names of nominees primarily provided by CTC, in order to conceal the true ownership of the assets from the IRS.

17. It was a further part of the conspiracy that the Defendants **TILGA** and **CHANDLER**, with the assistance of CTC, caused false liens to be filed against their properties, in amounts exceeding fair market value, in order to hinder tax enforcement efforts by the IRS.

18. It was a further part of the conspiracy that Defendants **TILGA**, **CHANDLER**, and **GEER** used other individuals to sign documents as nominees on Defendants' behalf, in order to conceal from the IRS the true ownership of the assets.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of New Mexico, and elsewhere:

19. In or about April, 1998, Defendant **TILGA** purchased Cabernet Financial from CTC.

20. In or about April, 1998, Defendant **TILGA** established a bank account for Cabernet Financial at the Anglo-Irish Bank in Austria.

21. On or about June 29, 1998, Defendants **TILGA** and **CHANDLER** purchased Worldwide Communications, a CTC product.

22. On or about September 10, 1998, Defendants **TILGA** and **CHANDLER** purchased a residence at 41 Snow Shoe Trail, Taos Ski Valley, New Mexico for $186,500, and deeded it in the name of General Management Services, a CTC product.

23. On or about September 10, 1998, Defendants **TILGA** and **CHANDLER** caused a total of $186,982.50 to be wire transferred from Cabernet Financial's offshore account at Anglo Irish Bank, Austria, to Tierra del Taos Title Co. Inc., New Mexico, for the purchase of the residence at 41 Snow Shoe Trail, Taos Ski Valley, New Mexico.

24. On or about July 13, 1999, Defendant **CHANDLER** rented a mail box in New Mexico, under the names Worldwide Communications and Cabernet Financial, both CTC products.

25. On or about October 7, 1999, trust documents for General Management Services, a CTC product, were filed with the County of Santa Fe, New Mexico, designating Defendant **TILGA** as "Managing Director."

26. On or about October 15, 1999, Defendants **TILGA** and **CHANDLER** purchased a residence at 5 Puma Circle, Santa Fe, New Mexico, for $1,382,000 and deeded it in the name of General Management Services, a CTC product.

27. On or about October 15, 1999, Defendants **TILGA** and **CHANDLER** caused $1,385,804 to be wire transferred from Astra Management's offshore account at

Standard Charter Bank, Channel Islands, to Southwestern Title and Escrow, Inc., New Mexico, for the purchase of a residence at 5 Puma Circle, Santa Fe, New Mexico.

28. On or about October 19, 1999, Defendants **TILGA** and **CHANDLER** caused a Deed of Trust to be filed with Santa Fe County, New Mexico, against 5 Puma Circle, Santa Fe, New Mexico, in the amount of $1,400,000, between General Management Services and Bressingham Investments, both CTC products.

29. On or about May 1, 2000, Defendant **CHANDLER** purchased a 2000 Lexus vehicle for $61,017 from Lexus of Albuquerque, and titled it in the name of General Management Services, a CTC product.

30. On or about May 1, 2000, Defendants **TILGA** and **CHANDLER** caused a total of $60,980 to be wire transferred from Cabernet Financial's offshore account at Anglo Irish Bank, Austria to Lexus of Albuquerque, for the purchase of the 2000 Lexus vehicle.

31. On or about May 16, 2000, Defendants **TILGA** and **CHANDLER** caused a Security Agreement between General Management Services and Bressingham Investments, both CTC products, to be filed with Taos County, New Mexico, purportedly encumbering 41 Snow Shoe Trail, Taos Ski Valley, New Mexico, for $395,000.

32. On or about August 15, 2000, Defendants **TILGA** and **CHANDLER** purchased a parcel of real property described as Lot 307, Town of Mountain Village, Telluride, Colorado, for $705,000 and had it titled in the name of Worldwide Communications, a CTC product.

33. On or about August 15, 2000, Defendants **TILGA** and **CHANDLER** caused a wire transfer of approximately $705,000 to be made from an offshore bank account they

owned and controlled, for the purchase of the real property described as Lot 307, Town of Mountain Village, Telluride, Colorado.

34.  On or about November 3, 2000, Defendants **TILGA** and **CHANDLER** purchased, in the amount of $305,000, Lot 9, The Summit, Mount Crested Butte, Colorado, and titled it in the name of Worldwide Communications, a CTC product.

35.  On or about November 3, 2000, Defendants **TILGA** and **CHANDLER** caused $20,000 and $285,000, in separate wires, to be wire transferred from Cabernet Financial and Astra Management's offshore bank accounts to Gunnison County Abstract, Co. Colorado, for the purchase of Lot 9, The Summit, Mount Crested Butte, Colorado.

36.  On or about February 1, 2001, Defendants **TILGA** and **CHANDLER** caused the filing of a Deed of Trust for $305,000, from Worldwide Communications to Bressingham Investments, both CTC products, purportedly encumbering Lot 9, The Summit, Mount Crested Butte, Colorado.

37.  On or about September 1, 2001, Defendants **TILGA** and **CHANDLER** purchased Vantage Global, Inc., from CTC.

38.  On or about September 1, 2001, Defendants **TILGA** and **CHANDLER** established a bank account for Vantage Global, Inc. with the Federal Bank of the Middle East, Cyprus.

39.  On or about October 1, 2001, Defendants **TILGA** and **CHANDLER** purchased a 1998 Ford Truck from Capital Ford, Santa Fe, New Mexico, for $19,695 and titled it in the name of General Management Services, a CTC product.

40. On or about April 12, 2002, Defendants **TILGA** and **CHANDLER** met with CTC representatives to purchase Batavia Guild Group from CTC. Defendants **TILGA** and **CHANDLER** were named "Managing Directors."

41. On or about May 14, 2002, Defendants **TILGA** and **CHANDLER** acquired Triad Universal from CTC. Defendant **TILGA** was appointed "General Manager" and Defendant **CHANDLER** was appointed "Secretary."

42. On or about May 17, 2002, Defendants **TILGA** and **CHANDLER** purchased a 2001 Mercedes Benz vehicle for $56,440 and titled it in the name Alsacia Marketing Services, a CTC product.

43. On or about May 17, 2002, Defendants **TILGA** and **CHANDLER** caused a wire transfer of approximately $28,940 from Vantage Global's offshore bank account at Federal Bank of the Middle East, Cyprus, to Premier Motor Cars, New Mexico, for the purchase of the 2001 Mercedes Benz vehicle.

44. On or about June 1, 2002, Defendant **GEER** and Defendant **TILGA** formed an LLC called One World Media, LLC with the State of New Mexico, Public Regulation Commission. Defendant **GEER** was listed on the incorporation papers as "Organizer," and an individual with the initials "J.P." was listed as Registered Agent. The true owner of One World Media, LLC was Defendant **TILGA**.

45. On or about May 28, 2002, Defendants **TILGA** and **CHANDLER** caused $1,854,612 to be wire transferred from Vantage Global's offshore bank account at Federal Bank of the Middle East, Cyprus, to Title Guarantee Co., Hawaii for the purchase of a residence at 3239 Kalihiwai Road, Kilauea, Hawaii.

46. On or about June 7, 2002, Defendants **TILGA** and **CHANDLER** purchased a residence at 3239 Kalihiwai Road, Kilauea, Hawaii, for $1,850,000 and titled it in the name of Batavia Guild Group, a CTC product.

47. On or about June 7, 2002, Defendants **TILGA** and **CHANDLER** caused a Deed of Trust for $3,000,000 to be filed with the Registrar of Conveyances in Hawaii. This Deed of Trust was between Batavia Guild Group and Bressingham Investments, both CTC products, and served to purportedly encumber the 3239 Kalihiwai Road, Kilauea, Hawaii residence.

48. On or about July 31, 2002, Defendant **TILGA** opened a bank account for One World Media, LLC at Los Alamos National Bank, New Mexico. Defendant **TILGA** was listed as President on the account opening documents, and Defendant **TILGA** submitted a letter requesting that Defendant **GEER** have signature authority for the bank account.

49. On or about June 25, 2000, Defendant **TILGA** filed a false 1999 United States Income Tax Return, Form 1040, with the IRS.

50. On or about April 15, 2001, Defendant **TILGA** filed a false 2000 United States Income Tax Return, Form 1040, with the IRS.

51. On or about October 6, 2002, Defendant **TILGA** filed a false 2001 United States Individual Income Tax Return, Form 1040, with the IRS.

52. On or about January 15, 2003, Defendant **GEER** formed an LLC called Futurecast Media, LLC with the State of New Mexico, Public Regulation Commission. Defendant **GEER** was listed as "Organizer," and an individual with the initials "J.P." was

listed as Registered Agent. At all relevant times Defendant **TILGA** was the true owner of Futurecast Media, LLC.

53.     On or about February 20, 2003, Defendant **GEER** rented a mailbox at PakMail, Santa Fe, New Mexico, for the use of General Management Services, Alsacia Marketing Service, and Triad Universal, all CTC products.

54.     On or about May 15, 2003, Defendants **TILGA**, **CHANDLER**, and **GEER** purchased Enchantment Property Management from CTC. Defendant **TILGA** was listed as "General Manager," Defendant **CHANDLER** was listed as "Secretary," and Defendant **GEER** was listed as "Assistant Secretary."

    a.     On or about June 26, 2003, Defendant **GEER** opened a bank account at Los Alamos National Bank, New Mexico, for the CTC product Enchantment Property Management. Defendant **GEER** had sole signature authority for this bank account.

56.     On or about various dates in 2003, Defendant **GEER** provided information to an individual with the initials "N.L.", a Certified Public Accountant, for the preparation of Defendant **TILGA's** personal and business income tax returns for 2002. Defendant **GEER** did not provide information to "N.L." about One World Media, LLC or Futurecast Media, LLC.

57.     On or about September 12, 2003, Defendant **TILGA** filed a false 2002 United States Individual Income Tax Return, Form 1040, with the IRS.

58.     On or about August 11, 2004, Defendant **TILGA** filed a false 2003 United States Individual Income Tax Return, Form 1040, with the IRS.

59.     On or about October 7, 2004, Defendant **CHANDLER** incorporated

Aloha Mountain Properties, LLC through the Corporation Company, Denver, Colorado. Defendant **CHANDLER** listed the Registered Agent as Worldwide Communications, a CTC product.

60. On or about October 28, 2004, Defendants **TILGA** and **CHANDLER** purchased a condominium at 8095 Aspen Street, Aspen, Colorado, for $745,000 and titled it in the name of Aloha Mountain Properties, LLC.

61. On or about October 2004, Defendants **TILGA** and **CHANDLER** caused a Deed of Trust to be filed with Pitkin County, Colorado for 8095 Aspen Street, Aspen, Colorado. This Deed of Trust purported to encumber the Aspen Street condominium for $800,000 in favor of Bressingham Investments, a CTC product.

62. On or about February 15, 2006, Defendant **TILGA** filed a false 2004 United States Individual Income Tax Return, Form 1040, with the IRS.

63. On or about June 1, 2006, after the IRS told Defendant **TILGA** that she was under investigation for possible tax violations, she appeared at the house of a former employee, having the initials "G.S.", and told this former employee that "she was not going to take the fall, that he was going to pay."

64. On or about various dates between 2003 and 2006, Defendant **TILGA** told a former employee, having the initials "G.S.", that if he was ever questioned about **TILGA's** properties or business interests, to lie and say that "Carolynne Tilga did not own them."

All in violation of 18 United States Code, Section 371.

## Count 2

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

65.    During the calendar year 1999, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income. Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 1999. Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing by her for 1999, an amount in excess of $600,000, by committing the following affirmative acts of tax evasion, among others; filing a false 1999 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 1999; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

## Count 3

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

66.    During the calendar year 2000, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income. Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 2000. Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing

by her for 2000, an amount in excess of $300,000, by committing the following affirmative acts of tax evasion, among others; filing a false 2000 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 2000; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

### Count 4

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

67.   During the calendar year 2001, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income.  Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 2001.  Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing by her for 2001, an amount in excess of $10,000,  by committing the following affirmative acts of tax evasion, among others; filing a false 2001 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 2001; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

## Count 5

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

68. During the calendar year 2002, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income. Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 2002. Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing by her for 2002, an amount in excess of $750,000, by committing the following affirmative acts of tax evasion, among others; filing a false 2002 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 2002; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

## Count 6

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

69. During the calendar year 2003, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income. Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 2003. Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing

by her for 2003, an amount in excess of $40,000, by committing the following affirmative acts of tax evasion, among others; filing a false 2003 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 2003; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

### Count 7

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

70.    During the calendar year 2004, Defendant **TILGA**, a resident of the District of New Mexico, earned and received taxable income. Upon this taxable income there were additional income taxes due and owing by Defendant **TILGA** to the United States for the calendar year 2004. Knowing the foregoing, Defendant **TILGA** willfully and intentionally attempted to evade and defeat the additional income taxes due and owing by her for 2004, an amount in excess of $150,000, by committing the following affirmative acts of tax evasion, among others; filing a false 2004 U.S. Individual Income Tax Return, Form 1040, with the IRS, which omitted a significant amount of income she earned in 2004; using nominee entities to conceal her receipt of taxable income; and transferring taxable income to offshore bank accounts and entities which did not report to the IRS.

All in violation of 26 United States Code, Section 7201.

### Count 8

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

71.     On or about April 15, 2003, Defendant **GEER**, a resident of the District of New Mexico, did willfully make and subscribe a 2002 United States Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the IRS. Defendant **GEER** knew this United States Individual Income Tax Return, Form 1040 for 2002, was not true and correct as to every material matter in that the Form 1040 tax return omitted material amounts of income on lines 22 and 41, this income having been earned and received by Defendant **GEER** during the year 2002.

All in violation of 26 United States Code, Section 7206(1).

### Count 9

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

72.     On or about April 19, 2004, Defendant **GEER**, a resident of the District of New Mexico, did willfully make and subscribe a 2003 United States Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the IRS. Defendant **GEER** knew this United States Individual Income Tax Return, Form 1040 for 2003, was not true and correct as to every material matter in that the Form 1040 tax return omitted material amounts of income on lines 22 and 40, this income having been earned and received by Defendant **GEER** during the year 2003.

All in violation of 26 United States Code, Section 7206(1).

### Count 10

Paragraphs 1 through 10 of the Introduction, above, are hereby incorporated by reference as if fully set forth here.

73.  On or about April 15, 2005, Defendant **GEER**, a resident of the District of New Mexico, did willfully make and subscribe a 2004 United States Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the IRS. Defendant **GEER** knew this United States Individual Income Tax Return, Form 1040 for 2004, was not true and correct as to every material matter in that the Form 1040 tax return omitted material amounts of income on lines 22 and 42, this income having been earned and received by Defendant **GEER** during the year 2004.

All in violation of 26 United States Code, Section 7206(1).

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

04/03/09 9:25am