**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No. 09-CR-865 JEC**

**CAROLYNNE TILGA, MICHAEL CHANDLER, AND HELEN GEER,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the *Motion and Incorporated Memorandum of Law by Defendant Carolynne Tilga to Suppress Illegal Evidence Obtained from David Warga, and, in the Alternative, to Dismiss the Indictment* (Doc. 76) ("Motion"), filed October 15, 2009. Having reviewed the parties' submissions, held a hearing on the Motion on January 27, 2010, and being otherwise fully informed, the Court will DENY the motion, as set forth below.

## I. BACKGROUND

Defendant Tilga is charged with five counts of tax evasion and conspiracy to defraud the United States. *Indictment* (Doc. 1). She claims the Internal Revenue Service (IRS) commenced its investigation of her in 2003 as a result of a letter and documents received from David Warga, a Canadian attorney with whom Defendant Tilga contends she had an attorney-client relationship. *Motion* at 2. As relief from the alleged breach of her attorney-client privilege, Defendant Tilga requests the Government to perform "a 'taint' function to make certain that the proofs it seeks to admit into evidence are not Protected Materials or the 'fruits' thereof, and were obtained by independent means." *Id.* at 4. Alternatively, Defendant Tilga requests dismissal of the entire Indictment. *Id.* at 5.

The Government acknowledges that the IRS received two letters from David Warga—one sent to its criminal side and dated April 8, 2003 and one sent to its civil side dated May 9, 2003. *Hearing Transcript* at 10. Nonetheless, it contends the Motion should be denied for four reasons: (1) Defendant Tilga has not demonstrated that she had an attorney-client relationship with Warga; (2) Warga's letters and the documents enclosed do not disclose any protected communications with Tilga; (3) Warga's disclosures described criminal conduct by Tilga, which cannot be protected by the attorney-client privilege; and (4) even if Warga's disclosures were improper and excluded from evidence, the Government would inevitably have discovered information sufficient to support the Indictment in this case. *Resp.* at 1-2. As to its fourth point, the Government notes that the IRS was independently investigating the Commonwealth Trust Company ("CTC") in 2002, before Warga's letters were received. *Id.* at 2. CTC is the company that assisted Defendants Tilga and Chandler in creating various trusts and companies in which she allegedly hid assets in order to avoid paying taxes. *Indictment* (Doc. 1) at ¶¶ 9-10. In July 2003, a search warrant executed on CTC premises in Albuquerque revealed incriminating evidence against Defendants Tilga and Chandler. *Resp.* at 4.

## II. FINDINGS OF FACT

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to "state its essential findings on the record" when there are factual issues involved in deciding a pre-trial motion. FED.R.CRIM.P. 12(d). I find the following facts relevant to the instant Motion:

Defendant Tilga was a business partner of Peter Zicherman and Fernando Pereira. (Docs. Rec'd from Warga, irs2/00229-irs2/00230 and irs2/00532). This partnership developed into an elaborate network of interrelated companies. (*Id.* at irs2/00230).

In 1996, Warga drafted a Unanimous Shareholders' Agreement between entities controlled by Tilga, Zicherman, and Pereira to serve as written evidence of the partnership between Tilga, Zicherman, and Pereira. (*Id.* at irs2/00545).

On or about September 9, 2002, Tilga brought suit in the Ontario Supreme Court of Justice against Zicherman, Pereira, and Warga, among others, claiming that Zicherman and Pereira excluded her from profits and otherwise breached fiduciary duties owed to her. (*Id.* at irs2/00562).

Tilga's Ontario Complaint alleges that Warga is a Canadian attorney who has, from time to time, provided legal advice and services to the partnership between herself, Zicherman, and Pereira. (*Id.* at irs2/00534).

On or about March 14, 2003, an entity controlled by Tilga (One World Media LLC) brought suit against David Warga, among others, alleging that he participated in a restructuring of business interests to eliminate Tilga's interest and profits therein. (*Id.* at irs2/00219-irs2/00250).

The Complaint authored by Tilga's company, One World Media LLC, asserts that Warga is a Canadian attorney and characterizes him as "instrumental in designing and constructing the corporate framework" of Giant Sun Group and its successors in interest, but the Complaint does not assert any attorney-client relationship between Tilga and Warga. (*Id.* at irs2/00227).

Defendant Tilga characterizes the nature of the advice she sought from Warga as follows:

> Mr. Warga gave me advice regarding my personal business dealings and the companies. He helped me from time to time with employee conflicts; potential acquisitions and sales of the companies as they related to my participation; various instances of threats from angry affiliates and people were

> personally threatening me. And I spoke to him as often as I felt necessary with situations that involved both the company and my personal involvement therein.

*Hearing Transcript* at 17.

According to Tilga, Warga also advised her about certain outside contractors who became angry at her because they felt they were unfairly treated. *Id.* at 18.

Tilga further notes her discussions with Warga regarding Simple.com, stating that she talked to him about "business structure; potential outcome for shareholders; contract negotiations with the potential acquiring companies." *Id.* at 19.

According to Tilga's Ontario Complaint, Simple.com is a United States corporation controlled by Walter Holdings, Inc., which is a Barbados corporation controlled by Tilga (37.5%), Zicherman (37.5), and Pereira (25%). (Warga Docs. at irs2/00537).

Tilga also testifies that she consulted Warga "about my personal credit situation and how that would affect any future capital raising or representation from me personally as far as continuing in acquisition for further capital development mode for these various entities." *Hearing Transcript* at 20.

Finally, Tilga explains that Warga followed up with her personally after meetings in which distributions were discussed, to talk to her "about how those cash flow scenarios or situations would affect me as a consultant, shareholder, in any manner the participant I was for the various entities." *Id.* at 20-21.

## III. DISCUSSSION

"Privileges in federal-question cases generally are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason

and experience.'" *In re Qwest Commc'n Int'l. Inc.*, 450 F.3d 1179, 1184 (10th Cir.2006) (quoting FED.R.EVID. 501). Such privileges are not to be construed expansively. *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (cautioning that privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'" (internal quotations omitted)).

The oldest privilege for confidential communications in the common law, the attorney-client privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "[T]he privilege will only be recognized when 'the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'" *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008) (quoting *In re Qwest*, 450 F.3d at 1185 (quotation omitted)).

**A. Warga Was Not Tilga's Attorney.**

Tilga, as the party seeking to assert the attorney-client privilege, has the burden of establishing its applicability. *In re Grand Jury Proceedings*, 144 F.3d 653, 658 (10th Cir. 1998) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir.1995)). "Special problems" arise in determining the existence of an attorney-client relationship where, as here, the attorney

at issue represented an entity[1] rather than an individual. *Id.* (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)). Namely, "[a]ny privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not to the officer." *Id.* (citations omitted). Thus, it is likely that any privilege as to communications between Tilga and Warga would belong to the partnership rather than Tilga individually.

A privilege owned by individuals such as Tilga, i.e., corporate officers who seek to assert privilege as to conversations with corporate counsel, may exist only in limited circumstances.

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*Id.* at 659 (quoting *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215 (2nd Cir. 1997). Moreover, while Tilga may have reasonably believed that Warga was her attorney as an

---

[1]The Court finds no basis upon which to distinguish a corporation from the partnership at issue in this case. Supreme Court Standard 503(a)(1) defines the client as "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer...." *See also* Weinstein's Evidence ¶ 503(a)(1)[01], at 503-20 (noting that the phrase "organization or entity" includes, at a minimum, partnerships); RESTATEMENT OF THE LAW GOVERNING LAWYERS § 123 cmt. c (Tent.Draft No. 2, 1989) ("Once it is recognized ... that the privilege applies to the corporate form of organization there seems no basis for limiting it to corporations, as distinct from unincorporated associations, partnerships, or sole proprietorships").

individual, her reasonable belief "is not sufficient here to create a *personal* attorney-client *privilege*." *Id.* (emphasis in original).

Applying the five-part test above to the present case, the fifth factor quite clearly has not been met. Tilga's testimony as to the advice she sought from Warga shows that their conversations concerned matters within the general affairs of Tilga's partnership with Zicherman and Pereira. For instance, Tilga testified that Warga gave her advice in dealing with "employee conflicts; potential acquisitions and sales of the companies as they related to my participation; various instances of threats from angry affiliates and people that were personally threatening me." *Hearing Transcript* at 17. She explains further that "I spoke to [Warga] as often as I felt necessary with situations that involved both the company and my personal involvement therein." *Id.* Although Tilga says she had many discussions with Warga regarding Simple.com—about its business structure and the possible sale of its intellectual property, including potential outcome for shareholders and negotiations with potential buyers—this was an entity owned not by Tilga as an individual but by the partnership between Tilga, Zicherman, and Pereira. *Hearing Transcript* at 19; Warga Docs. at irs2/00537. Similarly, whereas Tilga says she "talked to Warga in depth about her personal credit situation," it is clear from her testimony that the focus of those discussions was on the effect of Tilga's credit upon future capital raising for the partnership. *Hearing Transcript* at 20. Likewise, Tilga testified that Warga consulted with her regarding cash flow scenarios and distributions from the partnership or its various entities to Tilga. *Id.* In short, Defendant Tilga has failed to show that the substance of her conversations with Warga did not concern matters within the company. To the contrary, Tilga's testimony shows that her discussions with Warga concerned her personal circumstances only as they related to her

partnership with Zicherman and Pereira.

**B. No Evidence of Confidential Communications Exists.**

For the attorney-client privilege to apply, Tilga must show that her communications with Warga were "made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'" *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008) (quoting *In re Qwest*, 450 F.3d at 1185 (quotation omitted)). Tilga's testimony fails to reveal any topics of consultation that could reasonably be expected to remain confidential. The employee and affiliate conflicts Tilga mentions should certainly be expected to become public knowledge—perhaps particularly to Tilga's business partners. Sales of companies within the partnership or of partnership assets would also naturally become known outside of Tilga and Warga alone. Tilga's personal credit issues should also have been reasonably assumed to become public knowledge in the event that they became a problem for further capitalization of the businesses.

Separate and apart from these matters, the documentation provided by Warga to the IRS reveals none of the allegedly confidential communications testified to by Tilga. By the Court's calculations, over half of the approximately 500 pages of documents provided by Warga are simply pleadings or deposition testimony from other litigation involving Tilga and Warga. Nearly 150 additional pages appear to be public-record-type documents, relating to Tilga's trusts and real estate ownership. Additional documents are either communications from Tilga to others within the partnership structure or printouts of internet research presumably performed by Warga. The Court has found no reference to any conversations between Warga and Tilga.

Even if there were evidence to suggest an attorney-client relationship in this case, neither

Defendant Tilga's testimony nor any of the documentation provided by Warga provides any indication of confidential communications that would generally be protected by the attorney-client privilege.

**IV. CONCLUSION**

In summary, the Court finds that the attorney-client privilege was not offended by Attorney David Warga's communications with the IRS. Not only was there no attorney-client relationship between Warga and Defendant Tilga, but the Court also finds no evidence that any confidential communications between Tilga and Warga were disclosed.

IT IS THEREFORE ORDERED that the *Motion and Incorporated Memorandum of Law by Defendant Carolynne Tilga to Suppress Illegal Evidence Obtained from David Warga, and, in the Alternative, to Dismiss the Indictment* (Doc. 76) ("Motion"), filed October 15, 2009, is DENIED.

Dated February 17, 2010.

s/John Edwards Conway

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Jonathon M. Gerson, AUSA
Albuquerque, NM

Joseph M. Giannullo, AUSA
Washington, DC

Counsel for Defendant Tilga:

Kimberly A. Middlebrooks, Esq.
Albuquerque, NM

Roma W. Theus II, Esq.
Wellington, FL