IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                  No. CR 09-0865 JB

CAROLYNNE TILGA and
MICHAEL CHANDLER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) Defendant Carolynne Tilga's Memorandum in Aid of Sentencing of Defendant Carolynne Tilga and Limited Objections to Presentence Report, filed October 6, 2011 (Doc. 161)("Tilga Sentencing Memo"); (ii) the Government's Sentencing Memorandum, filed October 8, 2011 (Doc. 162)("U.S. Sentencing Memo"); and (iii) Defendant Carolynne Tilga's Supplementary Memorandum in Aid of Sentencing, filed January 6, 2012 (Doc. 168)("Tilga Supplement"). The Court held a sentencing hearing on January 13, 2012. The primary issues are: (i) whether the Court should depart downward on Defendant Carolynne Tilga's sentence; (ii) whether the Court should vary downward on Tilga's sentence; and (iii) whether the Court should impose a non-custodial sentence. The Court will grant in part and deny in part the requests in the Tilga Sentencing Memo and in the Tilga Supplement. The Court will deny the request in the U.S. Sentencing Memo that the Court impose a sentence at the top of the advisory guideline range. For the reasons set forth on the record and below, the Court sentences Tilga to 8-months imprisonment.

**PROCEDURAL BACKGROUND**

A federal grand jury indicted Tilga for a Klein conspiracy[1] to defeat the administration of the tax laws of the United States during the period 1998 to 2006 in violation of 18 U.S.C. § 371 and with tax evasion for the years 1999 to 2004 in violation of 26 U.S.C. § 7201. See Redacted Indictment, filed April 9, 2009 (Doc. 2)("Indictment"). On January 6, 2011, Tilga pled guilty to the Klein conspiracy. See Plea Agreement ¶ 3, at 2. In her Plea Agreement, Tilga waived her right to appeal any sentence at or under the maximum statutory penalty authorized. See Plea Agreement ¶ 22, at 13. After Tilga filed objections to the PSR, the Court entered a memorandum opinion and order. See Memorandum Opinion and Order, file November 8, 2011 (Doc. 165)("MOO"). In its MOO, the Court determined that the tax-loss calculation for the conspiracy was $23,200.00 and that Tilga used sophisticated means to commit the offense. See MOO at 1. Before the Court issued its MOO, the United States Probation Office ("USPO") calculated that Tilga had a total offense level of 10 and a criminal history category of I, which established a guideline imprisonment range of 6 to 12 months. PSR ¶ 94, at 37. With the two-level sophisticated means enhancement pursuant to U.S.S.G. § 2T1.1, see MOO at 59, Tilga now has a total offense level of 12 and a guideline imprisonment range of 10 to 16 months.

In her sentencing memorandum and supplement, Tilga asks that the Court vary from the guideline range, under the 18 U.S.C. § 3553(a) factors, to a non-custodial sentence. See Tilga

---

[1] A conspiracy to defeat the Internal Revenue Services' lawful function and victimize the IRS is known as a Klein conspiracy. See United States v. Adkinson, 158 F.3d 1147, 1154 (11th Cir. 1998)(citing United States v. Klein, 247 F.2d 908 (2d Cir. 1997)). To show a Klein conspiracy the United States must show not only (i) the requisite act of a failure to properly report income, but also (ii) an agreement between at least two conspirators to impede the IRS' functioning and (iii) knowing participation in such a conspiracy. See United States v. Adkinson, 158 F.3d at 1153; United States v. McKee, 506 F.3d 225, 238 (3d Cir. 2007).

Sentencing Memo at 12.  Tilga argues that the following facts support a non-custodial sentence: (i) her extraordinary restitution -- the approximately $3,300,000.00 in taxes and interest that Tilga paid to the United States; (ii) it is extremely unlikely that she will engage in similar conduct in the future; and (iii) a non-custodial sentence will not produce a disparity among similarly situated defendants.  <u>See</u> Tilga Sentencing Memo at 13-18.  In her supplement, Tilga adds that her extraordinary family circumstances -- as a stay-at-home mother to her two home-schooled children, one of whom suffers from cataracts, sensory integration disorder, and attention deficit/hyperactivity disorder -- counsel in favor of a non-custodial sentence.  <u>See</u> Tilga Supplement at 6-8.  Tilga also asserts that the Court should depart from the guideline range, because the totality of the circumstances fall outside the heartland of cases.  <u>See</u> Tilga Sentencing Memo at 18.  Tilga asserts that the following circumstances support a departure: (i) the extraordinary restitution she paid; and (ii) her family circumstances.  <u>See</u> Tilga Sentencing Memo at 19.  She contends that she is a true first-time offender who does not need to be punished further, and that a non-custodial sentence will serve the public interest, Tilga, and Tilga's family.  <u>See</u> Tilga Supplement at 10-11.

Plaintiff United States of America argues that the Court should sentence Tilga at the top of the advisory guidelines range.  <u>See</u> U.S. Sentencing Memo at 17.  The United States argues that Tilga was wealthy, well-educated, the product of a stable home, physically healthy, and living a life of privilege when she chose to commit her offense.  <u>See</u> U.S. Sentencing Memo at 18.  It asserts that, given these circumstances, her offense is more egregious and motivated "by sheer greed in the face of conspicuous wealth."  U.S. Sentencing Memo at 18.  The United States contends that the Court should not vary or depart from the applicable guideline range, because her family circumstances are not unusual, other educational options are available for her children, and, often, a defendant's family suffers when a parent is incarcerated.  <u>See</u> Government's Response to

Defendant Carolynne Tilga's Supplementary Sentencing Memorandum at 4-7, filed January 10, 2012 (Doc. 169).

The Court held a hearing on January 13, 2012. At the hearing, Tilga's arguments with respect to a departure substantially mirrored those made in her briefing, emphasizing her family circumstances and restitution. See Transcript of Hearing at 4:6-16:19 (January 13, 2012)(Court, Theus)("Tr.").[2] When the Court asked whether Tilga had the ability to pay a fine, Tilga responded that there are a number of contingent liabilities that she faces, including Internal Revenue Service penalties, that could impact her ability to pay a fine. See Tr. at 16:10-17:18 (Court, Theus). The United States asserted that the restitution Tilga paid was negotiated as part of her Plea Agreement and that it is inappropriate to characterize such restitution as extraordinary. See Tr. at 18:5-17 (Gerson). The United States' argument, with respect to a departure, also largely conformed with its arguments in the briefing. See Tr. at 19:7-20:14 (Gerson). Tilga then allocuted before the Court. See Tr. at 22:5-26:2 (Tilga). The United States then argued in support of a high-end guideline sentence, because Tilga's conduct was beyond the garden-variety tax case. See Tr. at 26:17-33:3 (Gerson). The Court asked whether it was appropriate to sentence Tilga to 16-months imprisonment, when the United States, before the Court overruled the sophisticated-means objection, was satisfied with a 12-month sentence. See Tr. at 33:4-14 (Court). The United States responded that its position has always been that Tilga should be sentenced at the high end of the guideline range. See Tr. at 33:15-25 (Gerson). With respect to a fine, the United States asserted that the statutory maximum is $250,000.00 and that, given Tilga's financial resources, the Court should impose a fine. See Tr. at 35:2-9 (Gerson).

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

**ANALYSIS**

The Court will vary downward and sentence Tilga to 8-months imprisonment. The Court does not believe that a non-custodial sentence is appropriate under the circumstances of this case. The Court will also impose a fine on Tilga reflecting that the costs that she has and will impose on the United States.

**I.     THE COURT WILL DENY THE REQUEST FOR A DOWNWARD DEPARTURE.**

Tilga requests that the Court depart downward, because of the restitution she paid and because of her family circumstances. See Tilga Supplement at 6-8. The Court will deny these requests.

The Court recognizes Tilga's proportionality argument and does not discount the restitution that she paid. When the Court looks to the scheme and dollars involved in the conspiracy, however, the Court does not believe that such restitution justifies a downward departure. The Court is cognizant of the fact that most of the restitution Tilga has paid is taxes which she owed. The Court does not believe that the restitution Tilga paid takes her case out of the heartland of tax cases, where many individuals are able to pay the amount owed. Additionally, Tilga's payment of restitution is, to some degree, taken into account when she receives a 2-level reduction in her total offense level for acceptance of responsibility. See PSR ¶ 45, at 21. Moreover, as a condition of her Plea Agreement, Tilga promises to make efforts to pay any taxes due and owing on all of her tax returns since 1998. See PSR ¶¶ 13-15, at 11-12. This restitution is part of the bargain she struck with the United States, in which the United States promised to move to dismiss Counts 2 through 7 of the Indictment, not to bring additional criminal charges, and to terminate all tax investigations of Tilga. See Plea Agreement ¶ 23, at 14. At the hearing, the United States Moved to dismiss the outstanding counts of the Indictment and stated that it would file a written motion to dismiss those counts. See

Tr. at 60:2-11 (Court, Gerson, Theus). Moreover, even in the cases on which Tilga relies, restitution is a discouraged factor to support a departure. See United States v. Kim, 364 F.3d 1235, 1242 (11th Cir. 2004)("We therefore conclude that extraordinary restitution is a discouraged factor."). Unfortunately, often in tax cases the defendant is wealthy or a professional, who has the capacity to pay his or her taxes, but chooses to try to avoid this obligation. This case remains within the heartland of cases. The Court does not believe that the restitution Tilga paid is so extraordinary to justify a downward departure. Even if a departure were warranted, the Court would exercise its discretion not to depart in this case.

With respect to Tilga's family ties, the United States Sentencing Commission has noted that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. The Court notes that home-schooling is largely a choice and that, although one of Tilga's daughters has some health problems, her daughter's health problems are not so significant that she could not attend public school. Unfortunately, because of the volume of cases in the District of New Mexico, the Court sees many defendants with children, and the Court must put these circumstances in context. Departures for family ties and circumstances are certainly an appropriate ground for a departure, but it is a ground that must be invoked with caution. The Court notes that the children's father is an available caretaker and that there are other possible caretakers available. In a prior case, the Court permitted a downward departure under this guideline where the defendant had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone. See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.). Additionally, the daughter's father was a severe alcoholic whom was unable to care for children, and the defendant had no family members living in or near New Mexico. See United States v. Martinez, 2011 WL 6828055, at *5.

Furthermore, the Court has denied departures under this guideline in cases with more compelling facts than this one.  For example, in United States v. Ledezma-Ledezma, No. 10-1924, 2011 WL 3957553 (D.N.M. Sept. 2, 2011)(Browning, J.), the Court denied a downward departure under this guideline when the defendant argued he had traveled to the United States to protect his children, who one of his stepchildren was allegedly sexually abusing.  See 2011 WL 3957553, at *2-3.  Children often suffer from the choices their parents make, but the Court does not believe it is appropriate to depart on this basis, where Tilga's children are better off than many and there is no danger to the children's health.  This case remains within the heartland of cases.

## II.     THE COURT WILL GRANT IN PART AND DENY IN PART THE REQUEST FOR A VARIANCE AND WILL IMPOSE A FINE.

The Court has carefully considered the guidelines.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  Tilga has a total offense level of 12 and a criminal history category of I, which establishes a guideline imprisonment range of 10 to 16 months.

After careful consideration of the facts and circumstances of this case, the Court concludes that the punishment set forth in the guidelines is not appropriate for this offense.  The Court believes that the guidelines produce a sentence that is slightly higher than necessary to achieve the purposes of 18 U.S.C. § 3553(a).  The Court believes that there are four factors which warrant some variance.  First, although the restitution does not take the case out of the heartland, the Court recognizes that Tilga has paid a sizeable amount in restitution.  Given this restitution, it is unlikely that the United States is still suffering a loss, but has been made whole.  The Court believes that the amount of restitution and that the United States has been made whole warrants some variance.  Second, the Court believes that there has been some rehabilitation and that she has accepted responsibility for

her actions. Given Tilga's position in society, this conviction is a staggering blow, and the Court believes that she has re-evaluated her choices. The Court does not believe that Tilga will recidivate and takes her at her word that she has undergone some internal changes as a result of this case. Third, any period of incarceration will place a burden on Tilga's children, who are home-schooled and have some health issues. Finally, the Court believes that Tilga's place within the community and the stigma she has faced within that community makes it unnecessary to emphasize some of the 18 U.S.C. § 3553(a) factors. On the other hand, this offense is a very serious crime.

      Before the Court found that a 2-level sophisticated-means enhancement should apply to Tilga's conduct, the United States argued in favor of a 12-month sentence, which was at the high-end of the then-applicable guideline range. The Court believes that the appropriate starting place is at 12 months, because originally the United States sought, and was satisfied with, a 12-month sentence. Although the Court ordinarily sentences at the bottom of the guideline range, the Court does not believe a sentence at the low-end of the guidelines is an appropriate starting point here. Twelve months marks an appropriate starting point for sentencing, because Tilga is wealthy and she committed this crime to increase her wealth -- not to support a needy family. Tilga could have lived very lavishly without this fraud. The Court also agrees with the United States that this is not the classic example of aberrant behavior. This conspiracy continued for a significant period of time. With a 12-month starting point and four factors weighing in favor of a variance, the Court believes that a sentence of 8-months imprisonment is appropriate and adequately reflects the 18 U.S.C. § 3553(a). The Court believes that to vary further would not provide a just punishment. The Court does not believe that it needs to deter Tilga from committing this offense again, but the Court has to emphasize general deterrence. The public has to know that her crime is a serious offense and that wealthy white-collar defendants, not just indigent defendants, will be punished. Equal justice before

this Court demands similar treatment of wealthy and indigent defendants. The Court also does not believe that it has to emphasize protecting the public from Tilga, but again, believes that some incarceration is necessary to protect the tax structure and prevent people from attempting to take advantage of the United States. The Court believes that anchoring the sentence to the guideline range and then varying based on Tilga's individual circumstance is the best way to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Such a method also remains as true as possible to the policies expressed in the guidelines and yet allows the Court to tailor a sentence individually for Tilga. The Court believes that, if it varies too greatly and imposes a non-custodial sentence, the sentence becomes unanchored and could result in sentencing disparities. Furthermore, the Court does not believe that a non-custodial sentence adequately reflects the seriousness of the offense, promotes respect for the law, or provides general deterrence. Although the Court believes that some variance was necessary to provide a just punishment, the Court will not vary to a non-custodial sentence. The Court believes that an 8-month sentence accomplishes the goals of 18 U.S.C. § 3553(a), along with some of the conditions of supervised release that the Court will impose. The Court believes that supervised release will provide Tilga with some needed training, education and care to prevent her from committing another offense. While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. Finally, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of

punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Tilga to 8-months imprisonment and 2 years of supervised release.

The Court will also impose a fine of $56,141.88 as part of Tilga's sentence. The United States asked that the Court impose a "substantial fine" on Tilga. U.S. Sentencing Memo at 20. The statutory maximum is a $250,000.00 fine. See 18 U.S.C. § 3571(a)(b)(3). Tilga appears able to pay a fine. Tilga has assets in excess of $7,800,000.00 and receives approximately $26,500.00 in monthly income. See PSR at 28-29. Tilga argued that the Court should also look to her contingent liabilities when determining her ability to pay a fine, because the Internal Revenue Service will be filing a civil action against Tilga and she will have other obligations to pay in the future, which will likely be substantial. See Tr. at 17:5-18 (Theus). The Court is cognizant of those potential liabilities; however, it may be that such liabilities are not levied or are not as substantial as Tilga fears. The Court does not believe that the fine it will impose is so great that it will impact Tilga's ability to pay these future, contingent liabilities. The guidelines provide that, for an offense level of 12 to 13, the fine range is $3,000.00 to $30,000.00. The Court finds that a fine at the high end of the guideline range is appropriate for this offense. Accordingly, the Court begins with a fine of $30,000.00. The Court then calculates the cost to the United States to incarcerate Tilga for eight months, which, at a cost of $2,357.01, will be roughly $18,708.07.[3] Because the Court imposed a sentence which included 2-years of supervised release, the Court also calculates what the United States will expend to monitor Tilga. The Court believes that, at a cost of roughly $328.20 per

---

[3] The Court's calculations at the hearing were slightly off. Eight-months imprisonment at a cost of $2,357.01 per month would be $18,856.80. The difference of $148.10 is not great and works in Tilga's favor.

month, the United States will spend approximately $7,876.80 while Tilga is on supervised release. Accordingly, the Court imposes a fine of $56,141.88.[4]

**IT IS ORDERED** that: (i) the requests in Defendant Carolynne Tilga's Memorandum in Aid of Sentencing of Defendant Carolynne Tilga and Limited Objections to Presentence Report, filed October 6, 2011 (Doc. 161), are granted in part and denied in part; (ii) the request in the Government's Sentencing Memorandum, filed October 8, 2011 (Doc. 162), is denied; and (iii) the requests in Defendant Carolynne Tilga's Supplementary Memorandum in Aid of Sentencing, filed January 6, 2012 (Doc. 168), are granted in part and denied in part. The Court will sentence Defendant Carolynne Tilga to 8-months imprisonment.

　　　　　　　　　　　　　　　　　　　　　　　／s／ James O. Browning
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

*Counsel*:

Joseph M. Giannullo
United Stated Department of Justice
Washington, D.C.

*--and--*

Kenneth J. Gonzales
  United States Attorney
Jonathon M. Gerson
Paula G. Burnett
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

　　　　*Attorneys for the Plaintiff*

---

[4]The Court's calculation at the hearing was again slightly off, as these amounts add up to $56,584.87. Here again, the difference is not great given the total amount of the fine and the error works in Tilga's favor.

month, the United States will spend approximately $7,876.80 while Tilga is on supervised release. Accordingly, the Court imposes a fine of $56,141.88.[4]

**IT IS ORDERED** that: (i) the requests in Defendant Carolynne Tilga's Memorandum in Aid of Sentencing of Defendant Carolynne Tilga and Limited Objections to Presentence Report, filed October 6, 2011 (Doc. 161), are granted in part and denied in part; (ii) the request in the Government's Sentencing Memorandum, filed October 8, 2011 (Doc. 162), is denied; and (iii) the requests in Defendant Carolynne Tilga's Supplementary Memorandum in Aid of Sentencing, filed January 6, 2012 (Doc. 168), are granted in part and denied in part. The Court will sentence Defendant Carolynne Tilga to 8-months imprisonment.

/s/ James O. Browning
UNITED STATES DISTRICT JUDGE

*Counsel*:

Joseph M. Giannullo
United Stated Department of Justice
Washington, D.C.

*--and--*

Kenneth J. Gonzales
  United States Attorney
Jonathon M. Gerson
Paula G. Burnett
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

---

[4]The Court's calculation at the hearing was again slightly off, as these amounts add up to $56,584.87. Here again, the difference is not great given the total amount of the fine and the error works in Tilga's favor.

B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

    *Attorneys for Defendant Carolynne Tilga*